7 F.3d 762
 42 Soc.Sec.Rep.Ser. 450, Medicare & Medicaid Guide
P 41,739
MACON COUNTY SAMARITAN MEMORIAL HOSPITAL, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.*
 No. 92-3349.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 14, 1993.
Decided Oct. 15, 1993.
Rehearing and Suggestion for Rehearing En Banc Denied Nov. 24, 1993.
 
 James A. Snyder, Kansas City, MO, argued, for plaintiff-appellant.
 Yvonne Ernzen, Kansas City, MO, argued, for defendant-appellee.
 Before JOHN R. GIBSON, LOKEN, and HANSEN, Circuit Judges.
 LOKEN, Circuit Judge.
 
 
 1
 Macon County Samaritan Memorial Hospital (Samaritan) appeals the district court[1] judgment upholding the administrative denial of Samaritan's application for sole community hospital (SCH) status for purposes of Medicare provider reimbursement under 42 U.S.C. § 1395ww. Samaritan argues that the Secretary of Health and Human Services based her denial upon an arbitrary and capricious regulation, 42 C.F.R. § 412.92(a)(3) (1988). We are apparently the first court of appeals to consider this issue, which has divided various district courts.[2] We uphold the regulation and affirm.
 
 I.
 
 2
 In 1972, concerned with health care provider abuses, Congress authorized the Secretary to establish appropriate cost limits on Medicare reimbursement. Consistent with a comment in the legislative history,[3] the Secretary's regulations exempted from the cost limits any hospital "which, by reason of factors such as isolated location or absence of other hospitals, is the sole source of such care reasonably available to beneficiaries." 42 C.F.R. § 405.460(e)(1) (1985). Over time, the Secretary added other exemptions and exceptions, and in a 1981 amendment Congress expressly authorized the Secretary to "provide for such exemptions and exceptions to such [cost] limitation as he deems appropriate." Pub.L. No. 97-35 § 2143(a), 95 Stat. 357, 798, 799 (1981). The Supreme Court recently upheld the Secretary's cost limitation regulations as a reasonable interpretation of an ambiguous statute.[4] See Good Samaritan Hosp. v. Shalala, --- U.S. ----, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993).
 
 
 3
 In 1983, Congress restructured Medicare provider reimbursement by enacting the Prospective Payment System (PPS). Social Security Amendments of 1983, Pub.L. No. 98-21, 97 Stat. 67 (1983). Before PPS, providers were paid the lesser of the "reasonable cost" or the "customary charge" for services provided to Medicare beneficiaries. 42 U.S.C. § 1395f(b). Under PPS, providers are paid for services at rates prospectively determined by the Secretary. See 42 U.S.C. §§ 1395ww(d). The 1983 law delegated broad exemption authority to the Secretary:
 
 
 4
 The Secretary shall provide for such exemptions from, and exceptions and adjustments to, the limitation established under paragraph (1)(A) as he deems appropriate, including those which he deems necessary to take into account--(A) the special needs of sole community hospitals....
 
 
 5
 42 U.S.C. § 1395ww(a)(2). Congress also for the first time included a statutory definition of a SCH:
 
 
 6
 For purposes of this subparagraph, the term 'sole community hospital' means a hospital that, by reason of factors such as isolated location, weather conditions, travel conditions, or absence of other hospitals (as determined by the Secretary), is the sole source of inpatient hospital services reasonably available to individuals in a geographical area who are entitled to benefits under part A.
 
 
 7
 42 U.S.C. § 1395ww(d)(5)(C)(ii) (1989).
 
 
 8
 In response to these major legislative changes, the Secretary promulgated comprehensive new regulations. See 48 Fed.Reg. 39752 (1983). Rather than grant total exemptions from PPS, the regulations provide that certain types of facilities will receive "special treatment." See 42 C.F.R. Part 412, Subp. G. For example, a SCH is entitled to a different prospective payment rate and to adjustments if it experiences a decrease in patient discharges or an increase in costs. See 42 C.F.R. § 412.92(d) (1988). Most importantly for our purposes, the regulations further define those hospitals eligible for SCH special treatment:
 
 
 9
 (a) Criteria for classification as a sole community hospital. HCFA classifies a hospital as a sole community hospital if it is located in a rural area ... and meets one of the following conditions:(1) The hospital is located more than 50 miles from other like hospitals.
 
 
 10
 (2) The hospital is located between 25 and 50 miles from other like hospitals and meets one of the following criteria:
 
 
 11
 (i) No more than 25 percent of residents who become hospital inpatients in the hospital's service area are admitted to other like hospitals located within a 50-mile radius of the hospital, or, if larger, within its service area;
 
 
 12
 (ii) The hospital has fewer than 50 beds and the intermediary certifies that the hospital would have met the criteria in paragraph (a)(2)(i) of this section were it not for the fact that some beneficiaries or residents were forced to seek care outside the service area due to the unavailability of necessary specialty services at the community hospital; or
 
 
 13
 (iii) Because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least one month out of each year.
 
 
 14
 (3) The hospital is located between 15 and 25 miles from other like hospitals but because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least one month out of each year.
 
 
 15
 42 C.F.R. § 412.92(a) (1988).
 
 
 16
 On July 31, 1989, Samaritan applied for designation as a SCH. The application stated:
 
 
 17
 While [Samaritan] technically does not meet the criteria for Sole Community Hospitals as set forth at 42 C.F.R. § 412.92(a)(3) because it is located 24.5 miles from another like facility and is not inaccessible for one month out of the year, [Samaritan] nonetheless believes that [it] meets the letter and the spirit of the SCH legislation and therefore should be entitled to such.
 
 
 18
 The Secretary's Health Care Financing Administration (HCFA) denied Samaritan's application as inconsistent with the regulation. After the Provider Reimbursement Review Board (PRRB) ruled that it may not determine the validity of the regulation, Samaritan commenced this action.[5]
 
 
 19
 In response to the parties' cross motions for summary judgment, the district court granted the Secretary's motion, concluding that the regulation "unambiguously considers the factors contained in the statute" and is therefore entitled to judicial deference. Samaritan appeals. The sole question presented on appeal, as in the district court, is whether the regulation in effect when Samaritan applied for SCH designation, 42 C.F.R. § 412.92(a)(3) (1988), is a permissible interpretation and application of the statute then in effect, 42 U.S.C. § 1395ww(d)(5)(C)(ii) (1989). Samaritan cannot satisfy the regulation because it is only 24.5 miles from a like hospital that is accessible year round. There have been numerous amendments to the statute and the regulation since 1983, including amendments to the 1989 versions here at issue. However, Samaritan would fare no better under the post-1989 amendments.
 
 II.
 
 20
 We must uphold the Secretary's determination unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 42 U.S.C. § 1395oo (f)(1); 5 U.S.C. § 706(2)(A). Samaritan argues that 42 C.F.R. § 412.92(a)(3) is arbitrary and capricious because the Secretary failed to explain why she changed the prior regulatory scheme, because the regulation is inconsistent with the statute's language and legislative history, and because the Secretary ignored important evidence in the rulemaking record.
 
 
 21
 A. Failure to Explain a Change in the Regulation.
 
 
 22
 An agency must give a reasoned basis for adopting a regulation. See 5 U.S.C. § 553(c); S.E.C. v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). When a new rule reflects a departure from the agency's prior policies, the agency "is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Samaritan argues that the Secretary violated this principle in adopting § 412.92(a)(3) because she did not explain why she departed from the prior policy of allowing market factors, such as physician admitting practices, to be considered in determining the SCH status of a hospital located less than twenty-five miles from a like hospital.
 
 
 23
 This contention is without merit for a number of reasons. First, § 412.92(a) was promulgated in response to a significantly amended statute, a factor not present in Motor Vehicle Mfrs. Ass'n. In the 1983 amendments, Congress both changed the method of reimbursement from a cost-based system to a prospective payment system and also supplied new statutory guidance for the granting of SCH designations. These substantial amendments were sufficient reason for the Secretary to adopt new regulations. In completing that task, her primary obligation was to be consistent with the new statute. If she fulfilled that obligation, we would be loathe to invalidate a new regulation simply because she did not also provide a complete dissertation on how and why it differs from the prior regulatory regime.
 
 
 24
 Second, Samaritan's assertion of a change in policy is largely wishful thinking. Under the prior cost limitation regulation, the Secretary had issued a 1974 Intermediary Letter declaring that, "Generally ... a hospital located within a 25-mile radius of a like facility" would not qualify as a SCH. I.L. 74-22. Although some hospitals in this category succeeded in overturning SCH denials on appeal because of factors such as physician admitting practices, see, e.g., St. Elizabeth Community Hosp. v. Heckler, 745 F.2d 587 (9th Cir.1984), the Secretary never embraced those decisions. Thus, § 412.92(a)(3) reflected adherence to, rather than a change from, the Secretary's prior policy regarding hospitals less than twenty-five miles from a like hospital. In this regard, we note that none of the extensive comments contained in the Secretary's rulemaking record, including a July 5, 1989, comment from Samaritan, criticized the Secretary for failing to explain a change from prior law.
 
 
 25
 Third, we have reviewed the Secretary's repeated, detailed explanations of the initial regulation and its subsequent amendments.[6] The Secretary did provide a reasoned analysis supporting each of these regulatory actions. For example, the Secretary justified § 412.92(a) in part by stating that, "a single set of objective criteria will promote uniformity throughout the nation in designating SCHs," 49 Fed.Reg. 234, 271 (1984), a rationale consistent with a concern expressed in the legislative history to the 1983 amendments.[7] We conclude that the Secretary did provide a "concise general statement of [the regulation's] basis and purpose," as required by 5 U.S.C. § 553(c).
 
 
 26
 B. Consistency with Statute and Legislative History.
 
 
 27
 Samaritan next argues that 42 C.F.R. § 412.92(a)(3) is inconsistent with the statute and legislative history because it excludes relevant factors such as market share and physician admitting practices for hospitals within twenty-five miles of a like hospital. Samaritan relies primarily on one statement from the legislative history of the 1983 amendments:
 
 
 28
 Therefore, the [Senate Finance] committee expects that the Secretary, in making such determinations for sole community providers ... will develop and take into account a much broader range of factors relating to beneficiary access to basic hospital services.
 
 
 29
 S.Rep. No. 23, supra n. 7, 1983 U.S.C.C.A.N. at 194.
 
 
 30
 1. As a matter of statutory construction, Samaritan's argument puts the cart before the horse. When reviewing an agency's interpretation of a statute, the court must first look to the statutory language. "If the agency regulation is not in conflict with the plain language of the statute, a reviewing court must give deference to the agency's interpretation of the statute." K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 292, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988).
 
 
 31
 Here, 42 U.S.C. § 1395ww(d)(5)(C)(ii) (1989) defines a SCH as a hospital "that, by reason of factors such as isolated location, weather conditions, travel conditions, or absence of other hospitals (as determined by the Secretary) is the sole source of inpatient hospital services reasonably available" to persons in its market area. Samaritan concedes that 42 C.F.R. § 412.92(a) addresses all of the enumerated statutory factors but argues that Congress by the use of such as plainly directed the Secretary to consider other factors as well. The Secretary responds that as determined by the Secretary is evidence of delegation of authority to determine whether or not to consider other factors. We cannot accept either textual argument.
 
 
 32
 The Secretary's argument is undermined by subsequent amendments to the statute. The relevant portion now reads, "factors such as the time required for an individual to travel to the nearest alternative source of appropriate inpatient care (in accordance with standards promulgated by the Secretary), location, weather conditions, travel conditions, or absence of other like hospitals (as determined by the Secretary)." 42 U.S.C. § 1395ww(d)(5)(D)(iii)(II) (changes underscored). These changes, combined with the word order and punctuation of the earlier version, strongly suggest that as determined by the Secretary modifies other like hospitals (or other hospitals in the 1989 version), not the entire phrase factors such as.
 
 
 33
 However, so limiting the scope of as determined by the Secretary in § 1395ww(d)(5)(C)(ii) (1989) does not leave the Secretary lacking the discretion she has exercised. The statute begins by delegating authority to "provide for such exemptions ... as [the Secretary] deems appropriate." § 1395ww(a)(2). That is a broad grant of discretion regarding all exemption questions. Further evidence of that broad discretion is found in the term factors such as in the subsection defining a SCH. We disagree with Samaritan that such as has the same meaning as including. Such as is "a phrase of general similitude" meaning for example or of the kind specified. Donovan v. Anheuser-Busch, Inc., 666 F.2d 315, 327 (8th Cir.1981). Unlike including, or its more specific, arguably redundant cousin, including, but not limited to, such as does not imply that there are necessarily more relevant factors than those Congress enumerated. Such as signifies a broader grant of discretion, one that permits but does not require the Secretary to conclude that there are other factors of the kind specified in the statute that are relevant to the determination she must make.
 
 
 34
 We conclude that the definition of a SCH adopted by the Secretary in § 412.92(a) is consistent with Congress's grant of discretion and with the substantive factors enumerated in the statute. Although the Senate Finance Committee suggested that the Secretary "develop ... a much broader range of factors," it specified no factors in addition to those included in the statute. Thus, as in Good Samaritan, "legislative history ... is of little, if any, assistance," --- U.S. at ---- n. 10, 113 S.Ct. at 2158 n. 10, and we must defer to the Secretary's interpretation of the statute.
 
 
 35
 2. Determining that the Secretary's regulation is not inconsistent with the statute does not end our inquiry; we must also determine whether her decision denying Samaritan SCH status was arbitrary and capricious. See Good Samaritan, --- U.S. at ---- & n. 16, 113 S.Ct. at 2162 & n. 16. "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43, 103 S.Ct. at 2867.
 
 
 36
 Samaritan argues that § 412.92(a)(3) is arbitrary and capricious because it does not consider market factors such as physician admitting practices. However, the regulation does consider market factors, but only for a rural hospital located between twenty-five and fifty miles from another like hospital. See 42 C.F.R. § 412.92(a)(2)(i), (ii) (1988). Thus, Samaritan's real complaint is that the Secretary has arbitrarily placed too much emphasis on the distance factor by creating distance-based brackets and then excluding other relevant factors in the bracket that applies to Samaritan.
 
 
 37
 We cannot agree that the Secretary's emphasis on distance between like hospitals is arbitrary and capricious. The ultimate question under the statute is whether a hospital "is the sole source of inpatient hospital services reasonably available to individuals in a geographic area." § 1395ww(d)(5)(C)(ii) (1989). Distance between hospitals is obviously a relevant measure of reasonable availability. The such as factors that Congress initially enumerated in the statute--isolated location, weather and travel conditions, and absence of other hospitals--all relate to physical proximity between hospitals, not economic or market factors. And Congress has more than once amended the statutory such as factors without either disturbing the Secretary's approach to the 15-25 mile distance bracket in § 412.92(a)(3) or adding non-physical market factors to the equation.[8] Finally, the rulemaking record demonstrates that the Secretary has continued to monitor her distance criteria to confirm their relevance to the statutory inquiry.[9]
 
 
 38
 3. An additional question in this case is whether the Secretary's regulation is arbitrary as applied because it denies Samaritan SCH designation for missing the more liberal 25-50 mile distance bracket by less than a mile. However, bright-line tests are a fact of regulatory life, and the Supreme Court has declined to hold that an agency "may never adopt a rule that lacks a waiver provision." F.C.C. v. WNCN Listeners Guild, 450 U.S. 582, 601 n. 44, 101 S.Ct. 1266, 1278 n. 44, 67 L.Ed.2d 521 (1981). The issue in this case is whether Samaritan is eligible for a government subsidy; as Judge Friendly observed in considering a far more sensitive regulatory question:
 
 
 39
 We are unable to understand why there should be any general principle forbidding an administrator, vested with discretionary power, to determine by appropriate rulemaking that he will not use it in favor of a particular class on a case-by-case basis, if his determination is founded on considerations rationally related to the statute he is administering.
 
 
 40
 Fook Hong Mak v. I.N.S., 435 F.2d 728, 730 (2d Cir.1970). Even if we would have adopted a different approach for borderline situations such as that posed by Samaritan, we cannot condemn as arbitrary and capricious the Secretary's decision to sacrifice some case-by-case precision in favor of a regime that is relatively easy to administer and promotes nationwide uniformity.[10]
 
 
 41
 C. Failure to Consider Important Evidence.
 
 
 42
 Finally, Samaritan argues that the Secretary's regulation is contrary to the rulemaking record because she ignored three reports. Two of the reports, one by the General Accounting Office and the other by the Regional Administrators' Task Force on Sole Community Hospital Exemptions, predated the 1983 statutory amendments. These commentators criticized the Secretary's prior twenty-five mile rule and her emphasis on distance and other physical factors. These criticisms were rejected by Congress in the 1983 amendments and thus cannot be used to attack the Secretary's regulations implementing those amendments.
 
 
 43
 The third report was authored by the Prospective Payment Assessment Commission, an advisory group responsible for annually submitting recommended PPS changes to the Secretary. See 42 U.S.C. § 1395ww(e)(2). The Commission's 1988 report suggested that the Secretary's SCH criteria may be "too restrictive." However, the Secretary specifically responded to this and other criticisms in her later rulemakings. See 54 Fed.Reg. 36481-83; 54 Fed.Reg. 19650-51. Having examined these responses, we cannot conclude that the Secretary's reasoning "is so implausible that it could not be ... the product of agency expertise." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43, 103 S.Ct. at 2867.
 
 
 44
 For all of the foregoing reasons, we conclude that the Secretary was not arbitrary and capricious and acted in accordance with law in denying Samaritan's application for SCH designation because Samaritan does not meet the criteria in 42 C.F.R. § 412.92(a)(3). The judgment of the district court is therefore affirmed.
 
 
 45
 JOHN R. GIBSON, Circuit Judge, dissenting.
 
 
 46
 I respectfully dissent.
 
 
 47
 I would reverse the district court's order holding that the Sole Community Hospital Regulation, 42 C.F.R. § 412.92, is valid. I would hold that it is invalid, and direct the Secretary to grant Samaritan Hospital sole community hospital designation effective January 10, 1990.
 
 
 48
 In the final analysis, this case is about a half mile. The essence of the Secretary's decision is that although it met all of the other criteria in the regulation, the Samaritan Hospital was 24.5 miles from the Moberly Hospital, thus failing to meet the 25-mile requirement, and accordingly, must be denied sole community hospital status. I believe that our court errs when it holds that the regulation adopted by the Secretary was consistent with the plain language of the authorizing statute. The Secretary failed to provide a reasoned analysis for the change in the regulatory scheme and failed to consider significant evidence in denying the sole community hospital status.
 
 
 49
 The court today adopts an unduly restrictive construction of the statute. The statute, which contains a general definition to determine whether a hospital is a sole source of hospital services reasonably available to individuals in a geographic area entitled to the benefits, has a much broader reach. My disagreement with the court commences with the astringency of its grammatical and semantic approach to the statutory language. First, I cannot agree that the phrase "as determined by the Secretary" modifies only the phrase "other like hospitals or other hospitals" and not the entire phrase "factors such as" with its enumerated examples. Nothing in the punctuation or word order suggests such a narrow reading. Secondly, I differ with the court's reading "such as" essentially as words of limitation. The court reads too narrowly our earlier decision in Donovan v. Anheuser Busch, Inc., 666 F.2d 315, 327 (8th Cir.1981), authored by the late District Judge William H. Becker, which concludes that the "such as" phrase "does not constitute words of limitation restricting the definition ..., but is an example or illustration.... The phrase 'such as' ... indicat[es] that there are includable other matters of the same kind which are not specifically enumerated by the standard." (Emphasis added). See St. Paul Fire & Marine Ins. Co. v. Helena Marine Serv., Inc., 884 F.2d 391, 394 (8th Cir.1989) (Hansen, J.), cert. denied, 494 U.S. 1004, 110 S.Ct. 1298, 108 L.Ed.2d 475 (1990). Donovan underscores that the phrase "such as" is not a phrase of strict limitation. The court's opinion recognizes some of this language from Donovan, but turns it on its head to make this a phrase of limitation. I would read, consistent with Donovan, the phrase "such as" to include not only the four specifically enumerated factors, but other considerations that would bear upon whether services are "reasonably available" to individuals in the geographic area. Under this more logical interpretation, the statute on its face requires consideration of not only the four enumerated factors, but also other aspects relating to reasonable availability such as physician admitting patterns and resident use of the various facilities. These additional considerations were factors the Secretary considered in determining sole community hospital status under earlier regulations which had been adopted without statutory definition.
 
 
 50
 As I conclude that the court's reading of the plain meaning of the statute is too narrow, it follows that I believe the Secretary's regulation improperly excluded all factors other than pure distance when it adopted the bright line 25-mile rule. A bright line 25-mile rule that does not allow consideration of factors such as physician admitting practices when a hospital is 24.5 miles from the next hospital providing similar services, but does so when the distance is 25 to 50 miles, most convincingly establishes that it is an arbitrary and capricious determination.
 
 
 51
 Further, I am convinced that the Secretary's adoption of a rule differing substantially from its earlier definition of sole community hospital was defective because there was not a sufficient reasoned analysis for the change. I cannot accept the argument the court makes today that the statutory definition relieves the Secretary from this responsibility under Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 57, 103 S.Ct. 2856, 2874, 77 L.Ed.2d 443 (1983). To the contrary, the addition of the statutory definition of sole community hospital and the four specified factors makes even more necessary an explanation of the significant change in standards. I find it particularly significant that the statute's legislative history clearly shows the desirability of a consideration of a broad range of factors relating to beneficiary access. The Senate Finance Committee Report stated:
 
 
 52
 Therefore, the Committee expects that the Secretary, in making such determinations for sole community providers under the new prospective payment system, will develop and take into account a much broader range of factors relating to beneficiary access to basic hospital services.
 
 
 53
 Sen.Rep. No. 23, 98th Cong., 1st Sess. 54, reprinted in 1983 U.S.C.C.A.N. 143, 194.
 
 
 54
 Finally, the record convinces me that the regulation is invalid because the Secretary failed to consider important evidence before promulgating the regulation. As Samaritan points out, the Secretary's reliance on the Prospective Payment Assessment Commission's Report as support for the 25-mile restriction is misleading. That report included data from all hospitals, rural and non-rural. Further, the Secretary ignored the fact that most hospitals that are within 25 miles of other hospitals are within the same community and meet none of the sole community hospital status factors.
 
 
 55
 The Samaritan Hospital met all of the requirements in the regulation, 42 C.F.R. § 412.92, with the single exception that it was only 24.5 miles rather than 25 miles from the nearest hospital. The regulation permitting this result was contrary to the plain language of the statute, and any question about it is set to rest by the legislative history. The direct result was an arbitrary and capricious determination by the Secretary.
 
 
 56
 I have been particularly persuaded by the reasoning in Central Oregon Hosp. Dist. v. Sullivan, 757 F.Supp. 1134, 1145 (D.Or.1991), holding that the regulation was promulgated arbitrarily and capriciously because it failed to consider factors in addition to distance, topography, and weather in determining sole community hospital status for hospitals less than 25 miles from the nearest hospital. This case carefully discusses similar issues and clearly details the regulatory and legislative background of this issue.
 
 
 57
 I would reverse.
 
 
 
 *
 Donna E. Shalala is substituted for former Secretary of Health and Human Services Louis W. Sullivan, M.D. See F.R.A.P. 43(c)
 
 
 [1]
 The HONORABLE JEAN C. HAMILTON, United States District Judge for the Eastern District of Missouri, who adopted the report and recommendation of the HONORABLE CATHERINE D. PERRY, United States Magistrate Judge for the Eastern District of Missouri
 
 
 [2]
 Compare Public Hosp. Dist. No. 1 v. Sullivan, 806 F.Supp. 1478 (E.D.Wash.1992), and Clinton Mem. Hosp. v. Sullivan, 783 F.Supp. 1429 (D.D.C.1992) (regulation valid), with Central Ore. Hosp. Dist. v. Sullivan, 757 F.Supp. 1134 (D.Ore.1991) (regulation invalid). In Community Hosp. v. Sullivan, 986 F.2d 357 (10th Cir.1993), the Tenth Circuit upheld another subpart of § 412.92 as consistent with congressional intent
 
 
 [3]
 "[The House Ways and Means] committee expects that the [cost limits] will not be applicable where there is only one hospital in a community...." H.R.Rep. No. 92-231, 92d Cong., 2d Sess. (1971), reprinted in 1972 U.S.C.C.A.N. 4989, 5070
 
 
 [4]
 The cost limits have been in large part replaced by the Prospective Payment System (PPS) discussed below. However, PPS does not apply to all hospitals. See 42 C.F.R. §§ 412.20-412.30
 
 
 [5]
 The PRRB is the administrative body that reviews HCFA provider determinations. See 42 U.S.C. § 1395oo. Providers may obtain judicial review when HCFA decides a question of law or regulation and the PRRB determines it is "without authority to decide the question." 42 U.S.C. § 1395oo (f)(1)
 
 
 [6]
 See 48 Fed.Reg. 39752 (1983) (proposing the interim final rule); 49 Fed.Reg. 234, 271 (1984) (responding to comments and promulgating final rule); 53 Fed.Reg. 19498, 19517-18 (1988) (proposing amendments to § 412.92); 53 Fed.Reg. 38476, 38510-13 (responding to comments and promulgating amendments); 54 Fed.Reg. 19636, 19649-51 (1989) (proposing amendments); 54 Fed.Reg. 36452, 36480-83 (1989) (responding to comments and promulgating amendments)
 
 
 [7]
 "The [Senate Finance] committee is concerned that ... the Secretary has applied different criteria in the different regions of the country, including some which are very narrow and restrictive." S.Rep. No. 23, 98th Cong., 1st Sess. 54 (1983), reprinted in 1983 U.S.C.C.A.N. 143, 194
 
 
 [8]
 For example, in May 1989 the Secretary amended 42 C.F.R. § 412.92(a)(1) to provide SCH status to any hospital that is 35, rather than 50, miles from another like hospital. 54 Fed.Reg. 19636, 19659 (1989). Congress responded by incorporating the 35-mile standard into the statute. See 42 U.S.C. § 1395ww(d)(5)(D)(iii)(I). This illustrates the close scrutiny Congress has given the Secretary's SCH regulations
 
 
 [9]
 In one of her later rulemakings, the Secretary discussed the results of a recent study of the SCH issue:
 We believe the Systemetrics data confirm the appropriateness of our standard that a hospital located within 25 miles of a like hospital would not be the sole source of care reasonably available unless topography or weather conditions make other hospitals inaccessible at least 1 month per year. The data show that only one percent of hospitals within 25 miles of another hospital provide at least 75 percent of the inpatient services received by Medicare beneficiaries residing within their service area.
 
 
 [54]
 Fed.Reg. 36452, 36481 (1989)
 
 
 [10]
 "While the courts will not hesitate to strike down regulations that are unauthorized or illegally promulgated, they will not attempt to substitute their judgment for that of the administrative agency." Gettler v. Lyng, 857 F.2d 1195, 1198 (8th Cir.1988) (citations omitted)