63 F.3d 882
 48 Soc.Sec.Rep.Ser. 695, Medicare & Medicaid Guide
P 43,539,
95 Cal. Daily Op. Serv. 6559,
95 Daily Journal D.A.R. 11,227
SAN BERNARDINO MOUNTAINS COMMUNITY HOSPITAL DISTRICT,
Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 94-55474.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 11, 1995.
 Decided Aug. 21, 1995.
 
 Lloyd A. Bookman and Gina M. Reese, Hooper, Lundy & Bookman, Los Angeles, CA, for plaintiff-appellant.
 Russell W. Chittenden, Asst. U.S. Atty., Los Angeles, CA, for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before LAY,* BRUNETTI and RYMER, Circuit Judges.
 LAY, Circuit Judge:
 
 
 1
 This appeal arises from the district court's grant of summary judgment in favor of the Secretary of the Department of Health and Human Services upholding the validity of its regulation governing "sole community hospital" status under the Medicare Act, 42 C.F.R. Sec. 412.92(a) (1994). The San Bernardino Mountains Community Hospital District ("the District") operates Mountains Community Hospital, which is located in Lake Arrowhead, California, within the County of San Bernardino. Lake Arrowhead is a mountainous region in the San Bernardino National Forest. Mountains Community Hospital is a general care hospital with fewer than fifty beds. The two nearest like-facilities to the hospital are located between twenty-five and thirty miles away. The District contends that, due to its location, weather and travel conditions, and the absence of other like hospitals nearby, the hospital is the sole source of hospital services reasonably available to individuals in and around Lake Arrowhead. The hospital seeks to be classified as a sole community hospital to be exempted from cost limits established under the Medicare program and thereby increase the amount it is reimbursed for treating Medicare patients.
 
 
 2
 Prior to Congress's enactment of the Medicare Prospective Payment System in 1983 ("PPS"), Mountains Community Hospital had secured classification as a "sole community hospital" under the Medicare program.[1] Shortly thereafter, however, the hospital's status as a sole community hospital became disadvantageous under the payment system, and it requested cancellation of its status. The Health Care Financing Administration, the arm of the Department of Health and Human Services that administers Medicare, approved the cancellation in 1985.
 
 
 3
 As part of the 1983 amendments, Congress also established a statutory definition of a sole community hospital:
 
 
 4
 A hospital that, by reason of factors such as isolated location, weather conditions, travel conditions, or absence of other hospitals (as determined by the Secretary), is the sole source of patient hospital services reasonably available to individuals in a geographical area who are entitled to benefits....
 
 
 5
 42 U.S.C. Sec. 1395ww(d)(5)(C)(ii) (1989) (later amended).[2]
 
 
 6
 On June 5, 1990, Mountains Community Hospital requested that it again be classified as a sole community hospital in response to changes Congress made for reimbursement in the OBRA. Later that year, Blue Cross of California, the hospital's fiscal intermediary, recommended to the Secretary that the hospital's request be approved based on its status as a "sole community hospital" before the PPS was enacted. The Secretary initially reclassified the hospital as a sole community hospital, but rescinded the reclassification shortly thereafter. The Secretary determined that the hospital did not qualify for such a status because it was not located in a "rural area," set forth in 42 C.F.R. Sec. 412.92(a).
 
 
 7
 Section 412.92(a) states in pertinent part:
 
 
 8
 [The Secretary] classifies a hospital as a sole community hospital if it is located more than 35 miles from other like hospitals, or it is located in a rural area ... and meets one of the following conditions:
 
 
 9
 (1) The hospital is located between 25 and 35 miles from other like hospitals and meets one of the following criteria:
 
 
 10
 (i) No more than 25 percent of residents who become hospital inpatients or no more than 25 percent of the Medicare beneficiaries who become hospital inpatients in the hospital's service area are admitted to other like hospitals located within a 35-mile radius of the hospital, or, if larger, within its service area;
 
 
 11
 (ii) The hospital has fewer than 50 beds and the intermediary certifies that the hospital would have met the criteria in paragraph (a)(1)(i) of this section were it not for the fact that some beneficiaries or residents were forced to seek care outside the service area due to the unavailability of necessary specialty services at the community hospital; or
 
 
 12
 (iii) Because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least 30 days in each 2 out of 3 years.
 
 
 13
 (2) The hospital is located between 15 and 25 miles from other like hospitals but because of local topography or periods of prolonged severe weather conditions, the other like hospitals are inaccessible for at least 30 days in each 2 out of 3 years.
 
 
 14
 (3) Because of distance, posted speed limits, and predictable weather conditions, the travel time between the hospital and the nearest like hospital is at least 45 minutes.[3]
 
 
 15
 (emphasis added.) In 42 C.F.R. Sec. 412.62(f)(1)(iii), the term "rural area" is defined as "any area outside an urban area." Section 412.62(f)(1)(ii) defines an "urban area" as a "Metropolitan Statistical Area ... as defined by the Executive Office of Management and Budget." In general, an area qualifies as a Metropolitan Statistical Area if there is one city with a population of at least 50,000 within the area, or it is an urbanized area (as classified by the Bureau of the Census) of at least 50,000 and a total population of 100,000. See 45 Fed.Reg. 956, 956 (1980). Once an area meets the above criteria, except in New England, the entire county containing that area is considered part of the Metropolitan Statistical Area, no matter how large the county. See id. Thus, all of San Bernardino County is considered part of the San Bernardino-Riverside Metropolitan Statistical Area.[4]
 
 
 16
 On January 7, 1991, the hospital appealed the Secretary's decision to the Provider Reimbursement Review Board ("the Board"), challenging the validity of section 412.92(a) and subsequently requesting expedited judicial review. The Board determined that it was without authority to decide the validity of the Secretary's regulation. It then granted the hospital's request for judicial review. In March 1992, the District (on behalf of the hospital) filed a complaint in the United States District Court for the Central District of California. The district court granted summary judgment in favor of the Secretary on January 31, 1994, upholding the validity of section 412.92(a), and the District appeals.
 
 DISCUSSION
 I.
 
 17
 The District contends that the hospital meets all the qualifications of a sole community hospital except that it is located in a Metropolitan Statistical Area, and thus, by definition, it is not located within a "rural area." It challenges the Secretary's regulation on several grounds.
 
 
 18
 The District fundamentally argues that the urban/rural distinction in section 412.92(a) is inconsistent with the Medicare statute because 42 U.S.C. Sec. 1395ww(d)(5)(D)(iii) provides that all hospitals, including hospitals located within a defined statistical area, must be considered for sole community hospital status. Section 1395ww(d)(5)(D)(iii) states the term sole community hospital "means any hospital" that meets one of the several factors rendering it the sole source of reasonably available inpatient services within a geographic area. The District contends this language unambiguously states that the Secretary must consider all hospitals for such a status, not just those located outside of a Metropolitan Statistical Area.[5] Thus, it asserts section 412.92(a) defies Congress's mandate that all hospitals which are sufficiently isolated are eligible for the exempt status.
 
 
 19
 We disagree. We find the statute's inclusion of the terms "such as" and "as determined by the Secretary," and the broad grant of discretionary authority in 42 U.S.C. Sec. 1395ww(a)(2),[6] make clear that Congress intended to delegate to the Secretary the task of outlining and defining the criteria for attaining sole community hospital status. In fact, in upholding different portions of the Secretary's definition in section 412.92(a), two of our sister circuits have recognized that the Secretary indeed has broad authority to define the various criteria to qualify as a sole community hospital. See Clinton Memorial Hosp. v. Shalala, 10 F.3d 854, 857 (D.C.Cir.1993) ("Clinton ") (referring to the statute's "delegation to the Secretary of primary responsibility for implementing the [sole community hospital] definition"); Macon County Samaritan Memorial Hosp. v. Shalala, 7 F.3d 762, 767 (8th Cir.1993) ("Macon ") (finding that Sec. 1395ww(a)(2) and "such as" language in Sec. 1395(d)(5)(D)(iii) signify a broad grant of discretion).[7] Once " 'Congress has explicitly left a gap for the agency to fill,' we will give the resulting regulation 'controlling weight' unless it is 'manifestly contrary to the statute.' " National Medical Enter., Inc. v. Sullivan, 957 F.2d 664, 667-68 (9th Cir.1992) (quoting Chevron, U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984)).
 
 
 20
 We find nothing in the Secretary's definition of a "rural area" that is manifestly contrary to the statute. First, the District's contention that Congress's use of the word "any" in the statute rules out the Secretary's use of the statistical area criterion is meritless. The statute simply defines a sole community hospital as any hospital that meets the criteria established under the subsequent subsections; as stated above, defining these criteria is largely left to the discretion of the Secretary. In addition, the use of the phrase "factors such as" reveals that Congress intended to permit (but did not require) the Secretary to consider both the named factors and other relevant considerations. See Macon, 7 F.3d at 767 (stating that "such as" signifies a very broad grant of discretion to consider named and other relevant factors). Moreover, the definition of a Metropolitan Statistical Area can also be viewed as one element of the "isolated location" factor Congress specifically listed in the statute for the Secretary to consider and define. Thus, section 412.92(a) is consistent with the plain language of the statute.
 
 
 21
 The District also asserts that the legislative history of Sec. 1395ww(d)(5)(D)(iii), formerly Sec. 1395ww(d)(5)(C)(ii), establishes that the Secretary's regulation violates congressional intent. The District cites a discussion in the Senate committee report accompanying the PPS amendments which states the Secretary should take into account a "broader range of factors" in determining eligibility and apply uniform nationwide standards instead of the "narrow and restrictive" criteria that had been applied in some regions. S.Rep. No. 23, 98th Cong., 1st Sess. 54, reprinted in 1983 U.S.C.C.A.N. 143, 194. It contends the Secretary's adoption of the defined Metropolitan Statistical Area defied Congress's intent that she undertake a more flexible approach in determining a hospital's status under the PPS.
 
 
 22
 Again, however, the District's arguments are unpersuasive. As an initial matter, both the Clinton and Macon courts suggested that because the Secretary's interpretations fall squarely within her statutorily granted discretion, legislative history such as the Senate committee report cannot defeat the regulation. Clinton, 10 F.3d at 858 (stating that the committee report cannot "condemn as impermissible an interpretation fitting squarely within the statutory language"); Macon, 7 F.3d at 767 (quoting K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)) ("If the agency regulation is not in conflict with the plain language of the statute, a reviewing court must give deference to the agency's interpretation...."). Moreover, even if we choose to review the legislative history, it does not support the District's arguments. As the Clinton court also concluded, the Senate committee report upon which the District relies makes clear that Congress was mostly concerned that sole community hospital classifications be clear-cut and applied consistently and systematically. See 10 F.3d at 858 (stating that the committee's goal was consistent and uniform standards). This concern does not counsel against the adoption of the Metropolitan Statistical Area definition; rather, it supports the use of such a uniform standard for deciding whether a hospital is isolated. Thus, section 412.92(a) is consistent with both the plain language of the statute and its legislative history.
 
 II.
 
 23
 The District also argues the regulation is invalid because the urban/rural distinction is arbitrary and capricious. Prior to 1983, the Secretary frequently granted sole community hospital status to isolated hospitals located within a Metropolitan Statistical Area, including Mountains Community Hospital and eleven other California facilities. The District contends the Secretary has not provided a reasoned analysis for departing from her prior practice.[8]
 
 
 24
 As the District recognizes, however, the Secretary offered at least two reasons for her 1983 changes to the regulation: the establishment of objective criteria that would promote uniformity and the presumption that urban residents have adequate access to hospital services. See 49 Fed.Reg. 234, 271 (1984); 48 Fed.Reg. 39,752, 39,780 (1983). We believe these reasons are more than sufficient to support the validity of the definition of "rural area" in section 412.92(a). In both Clinton and Macon, the courts rejected the claim that because section 412.92(a) reflected a change in agency policy, the Secretary was obligated to provide a "reasoned analysis" of its decision. Clinton, 10 F.3d at 859; Macon, 7 F.3d at 766. Rather, the Secretary must merely amend the regulations deliberately and articulate permissible reasons for the amendment. Clinton, 10 F.3d at 859. The Secretary's action easily survives such a review:
 
 
 25
 Here, Congress's overhaul of the Medicare program in 1983 and its decision to provide for the first time a statutory definition of "sole community hospital" gave the Secretary an obvious reason--perhaps an obligation--to revisit the SCH regulation. In addition, the Secretary made clear that the prior method of determining SCH status was not disappearing through oversight; in response to a comment supporting the old method, the Secretary explained that "objective criteria" would promote uniformity and efficiency in handling SCH requests, and hence would "resolve many of the previous problems associated with SCH designations."
 
 
 26
 Clinton, 10 F.3d at 859 (citing 49 Fed.Reg. 234, 271/3 (1984)).[9]
 
 
 27
 Furthermore, the fact that the District believes the criteria set forth in section 412.92(a)(1-3) would suffice alone to achieve national uniformity, does not help its case. The existence of an alternative means of achieving the goal of the statute, even if the alternative is the "better" means, is not sufficient to warrant this Court's invalidating an otherwise reasonable regulation. See, e.g., Chevron U.S.A., 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11. Moreover, although the definition of a Metropolitan Statistical Area was not designed and is not perfectly tailored for determining which hospitals should qualify, it provides a reasonably accurate, uniform, and efficient means of deciding which hospitals are more likely to be isolated from other like facilities.
 
 
 28
 Finally, and contrary to the District's contentions, the Metropolitan Statistical Area definition is unlike the "adjacency requirement" (contained in another Medicare regulation) declared invalid in Athens Community Hospital, Inc. v. Shalala, 21 F.3d 1176, 1180 (D.C.Cir.1994). In that case, the court found irrational the Secretary's requirement in 42 C.F.R. Sec. 412.230(a) that in order to seek redesignation as an urban hospital, a rural hospital must be located in a county adjacent to an urban area. See 21 F.3d at 1180. The court first declared that some "over- and under-inclusiveness would not be fatal to the adjacency requirement if the Secretary gave a reasonable justification for administering only rough justice." Id. Yet the court ultimately concluded that the justification for the regulation--ensuring geographic proximity to the urban labor pool--was not served by the adjacency requirement because workers' willingness to commute is simply unaffected by the number of county lines they must cross. Id. In addition, the court found the adjacency requirement superfluous in light of the thirty-five mile proximity rule also contained within the regulation. Id.
 
 
 29
 The statistical area definition at issue in this case, however, is both relevant and helpful in determining which hospitals are in an "isolated location" and therefore qualified for exemption. A hospital in an urban area is not likely to be in an isolated location because of the availability of various roads and transportation systems. Although the Metropolitan Statistical Area classification is not a perfect measure of whether a particular region is "urban," it is an established and uniform standard that generally coincides with the definition of an urban area. Thus, the "rough justice" achieved by the Metropolitan Statistical Area definition is supported by a reasonable justification.
 
 III.
 
 30
 For the foregoing reasons, the regulation is neither inconsistent with the statute nor arbitrary and capricious. The district court's grant of summary judgment in favor of the Secretary is therefore affirmed.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 Before adoption of the Medicare Prospective Payment System in 1983, a hospital was reimbursed under Medicare for its "reasonable cost" or "customary charges," whichever was lower. In 1972, Congress authorized the Secretary to establish cost limits. 42 U.S.C. Sec. 1395x(v)(1) (1988) (codified as amended). The Secretary subsequently exempted sole community hospitals from its adopted cost limits. After the enactment of the PPS, a hospital was paid a fixed amount per discharge depending on the type of case treated, regardless of actual costs. See 42 U.S.C. Sec. 1395ww(d) (1988)
 
 
 [2]
 Congress modified this definition slightly in the Omnibus Budget Reconciliation Act of 1989 ("OBRA"):
 [T]he term "sole community hospital" means any hospital--
 (I) that the Secretary determines is located more than 35 road miles from another hospital, [or]
 (II) that, by reason of factors such as the time required for an individual to travel to the nearest alternative source of appropriate inpatient care (in accordance with standards promulgated by the Secretary), location, weather conditions, travel conditions, or absence of other like hospitals (as determined by the Secretary), [it] is the sole source of inpatient hospital services reasonably available to individuals in a geographic area who are entitled to benefits....
 42 U.S.C. Sec. 1395ww(d)(5)(D)(iii) (Supp.1993).
 
 
 [3]
 The requirement at issue in this case--that a hospital be located in a rural area--has been in the regulation since 1983. The "if it is located more than 35 miles from other like hospitals" language was added in 1991 to conform to the changes to the statute included in the OBRA, supra
 
 
 [4]
 The District contends the Office of Management and Budget strongly disapproves of agencies using the Metropolitan Statistical Area categorization for nonstatistical purposes. See, e.g., 43 Fed.Reg. 55,954, 55,954 (1978) ("The Metropolitan Statistical Areas are established and defined strictly as a statistical standard for use in insuring consistent statistics.... [T]he definitions established for statistical purposes may not always be appropriate when applied to other programs.")
 
 
 [5]
 The District further suggests that the statute rejects the definition of a Metropolitan Statistical Area because it provides that all hospitals located more than thirty-five miles from another like facility shall be considered a sole community hospital, regardless of whether they are found within the defined statistical area. It also claims the Secretary has recognized that hospitals within a statistical area can acquire the status as a sole community hospital, because the Secretary changed section 412.92(a) in 1991 to include the thirty-five mile standard and conform with the statute
 
 
 [6]
 Section 1395ww(a)(2) provides in pertinent part:
 The Secretary shall provide for such exemptions from, and exceptions and adjustments to, the limitation established under paragraph (1)(A) as he deems appropriate, including those which he deems necessary to take into account ... the special needs of sole community hospitals ...
 
 
 [7]
 The Clinton court found valid the mileage thresholds the Secretary had adopted in section 412.92(a)(3), rejecting the hospital's arguments that the regulation defied the statutory mandate and was supported by an inadequate statement of basis and purpose. 10 F.3d at 858, 859. The Macon court also upheld a mileage threshold contained in section 412.92(a)(3) against similar attacks. 7 F.3d at 769
 
 
 [8]
 Moreover, there is no indication in the rulemaking record that the Secretary considered the definition of a Metropolitan Statistical Area, or appropriateness of using this definition to determine whether a hospital is isolated. The District further argues that the Secretary's use of the classification is simply inappropriate because many statistical areas, such as the San Bernardino-Riverside area, span thousands of square miles and contain remote areas within which commuting times can be well over an hour
 
 
 [9]
 Macon provides a similar analysis, distinguishing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), upon which the District relies. 7 F.3d at 766. The Supreme Court had stated in Motor Vehicle Mfrs. Ass'n that an agency "is obligated to supply a reasoned analysis for the change [in its prior policies] beyond that which may be required when an agency does not act in the first instance." 463 U.S. at 42, 103 S.Ct. at 2866. The Macon court stated that this standard does not threaten the validity of section 412.92(a):
 [Section] 412.92(a) was promulgated in response to a significantly amended statute, a factor not present in Motor Vehicle Mfrs. Ass'n.... These substantial amendments [to the Medicare statute] were sufficient reason for the Secretary to adopt new regulations. In completing that task, her primary obligation was to be consistent with the new statute. If she fulfilled that obligation, we would be loathe to invalidate a new regulation simply because she did not also provide a complete dissertation on how and why it differs from the prior regulatory regime.
 7 F.3d at 766.