10 F.3d 842
 304 U.S.App.D.C. 67
 MCI TELECOMMUNICATIONS CORPORATION, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
American Telephone and Telegraph Company, Intervenor.
 No. 92-1295.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 26, 1993.
Decided Dec. 10, 1993.
 
 [304 U.S.App.D.C. 68] Petition for Review of an Order of the Federal Communications Commission.
 Donald J. Elardo, argued the cause, for petitioner. With him on the briefs were Loretta J. Garcia and Frank W. Krogh.
 Carl D. Lawson, Counsel, F.C.C., argued the cause, for respondents. With him on the brief were Renee Licht, Acting Gen. Counsel, F.C.C., Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., John E. Ingle, Deputy Associate Gen. Counsel, F.C.C., Anne K. Bingaman, Asst. Atty. Gen., U.S. Dept. of Justice, Robert B. Nicholson and Robert J. Wiggers, Attys., U.S. Dept. of Justice. Laurence N. Bourne, Counsel, F.C.C., entered an appearance, for respondents.
 Peter D. Keisler, argued the cause, for intervenors. With him on the brief were David W. Carpenter and Roy E. Hoffinger.
 Before SILBERMAN, SENTELLE, and RANDOLPH, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 [304 U.S.App.D.C. 69] SENTELLE, Circuit Judge:
 
 
 1
 In a complaint proceeding before the Federal Communications Commission, MCI sought damages from American Telephone & Telegraph Co. (AT & T) for violations of section 201(b) of the Communications Act of 1934, 47 U.S.C. Sec. 201(b) (1988). The Commission, by order, held that a rulemaking that took effect in 1992 precluded an award of damages for violations occurring before that date and thus dismissed the complaint. MCI now petitions for review of the order.
 
 
 2
 We hold that the rulemaking does not justify the Commission's decision. As the decision rested solely on that basis, we grant the petition for review, vacate the order, and remand for further proceedings.
 
 I.
 
 3
 Section 201(b) of the Communications Act provides:
 
 
 4
 All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful....
 
 
 5
 This case concerns the application of section 201(b) to the market for interstate interexchange inbound services for business customers. AT & T enjoys substantial power in this market by virtue of the widespread use of its "800" numbers. In recent years the Commission has sought to combat the threat that AT & T will leverage its power in the 800 number market into an advantage in more competitive markets, notably that for outbound services. AT & T may have exercised that leverage through "bundling," whereby it offers a discount on outbound services to customers who also purchase AT & T's inbound services. Because 800 numbers were not "portable" during the period at issue here (meaning that a customer who changed carriers could not retain its established 800 number), customers who already used AT & T's inbound service and had invested substantially in public recognition of their numbers (e.g., "1-800-HOLIDAY" for Holiday Inn) could not switch to another 800 carrier without great expense. Those customers would presumably have an incentive to purchase the bundled package from AT & T regardless of the competitive price for outbound service.
 
 
 6
 In 1990 the FCC initiated a notice-and-comment rulemaking to address, inter alia, AT & T's bundling of 800 numbers. See Competition in the Interstate Interexchange Marketplace, Notice of Proposed Rulemaking, 55 Fed.Reg. 18007 (1990) (to be codified at 47 C.F.R. pt. 61) (proposed April 30, 1990). The Commission issued a rule that, after modification, resulted in a prohibition tailored to situations where leverage might occur: AT & T was barred from offering in the future any bundle that provided outbound services in conjunction with inbound services to old 800 numbers (i.e., numbers assigned before the issuance of the modified order). AT & T could, however, lawfully provide bundled service to customers (old or new) who took new 800 numbers. The Commission also held that, as to existing 800 customers who used old 800 numbers under a previously agreed bundled contract, the practice was "grandfathered." AT & T could thus continue to provide bundled service to such customers. See Competition in the Interexchange Marketplace, Report and Order, 56 Fed.Reg. 55235 (1991); Order on Reconsideration, 57 Fed.Reg. 20206 (1992) ("IXC Recon. Order"), petition for review pending sub nom. AT & T v. FCC, No. 93-1306 (D.C.Cir.1992) (the "IXC Orders").
 
 
 7
 Since 1989 AT & T has offered "NRA Express" (Network Rapid Access), a limited inbound service, in a bundle with its "SDN" (Software Defined Network) outbound service. SDN allows calls from the customer's office to (1) another office of the same firm ("on-network" calls) or to (2) some other location ("off-network" calls). NRA Express complements SDN by assigning customers a special 800 number with which to make calls to the customer from off-network locations. NRA Express does not provide many of the blocking and routing capabilities of standard 800 service.
 
 
 8
 In 1990 MCI lodged with the Commission a formal complaint and request for damages based on allegedly unlawful features of the [304 U.S.App.D.C. 70] NRA Express bundling. MCI claimed, so far as here relevant, that NRA Express leveraged AT & T's 800 service market power into the outbound services market and thus violated section 201(b) of the Communications Act under Commission precedent interpreting that section. MCI requested injunctive relief and damages for its net revenue loss caused by bundling arrangements offered by AT & T and accepted by customers.
 
 
 9
 One month after the IXC Orders issued, the Commission granted injunctive relief because it found that future bundling of the NRA Express Service with old 800 numbers fell within the IXC Orders ' prohibition. AT & T has not sought review of that ruling. The Commission, however, dismissed MCI's request for damages on the following ground:
 
 
 10
 The effect of our finding in the IXC Orders regarding the unlawfulness of bundling 800 or inbound services using old 800 numbers is prospective and prior customers are grandfathered. Consistent with the IXC Orders, we conclude that no liability for damages attaches to AT & T for conduct occurring prior to the release date of the IXC Recon Order.
 
 
 11
 See MCI Telecommunications Corp. v. American Tel. & Tel. Co., 7 F.C.C.R. 3047, 3050-51 (May 15, 1992) ("NRA Express Order"). Without requesting reconsideration of the NRA Express Order, MCI lodged a petition for review in this Court. AT & T has intervened in support of the Commission.
 
 
 12
 After setting the case for oral argument, we directed the parties to address the relevance, if any, of our decision in American Tel. & Tel. Co. v. FCC, 978 F.2d 727 (D.C.Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 3020, 125 L.Ed.2d 709 (1993), involving all three parties in this case. Reminded by the principles set forth in AT & T, MCI asserts that under Commission precedent governing the period from 1989 to April 17, 1992, the effective date of the IXC Recon. Order, it is entitled to damages for AT & T's conduct in that period. MCI maintains that the Commission erred by construing the IXC Orders to bar damages for conduct before the effective date of the Orders.
 
 II.
 A.
 
 13
 The threshold question is whether the exhaustion requirement codified in section 405 of the Communications Act, 47 U.S.C. Sec. 405 (1988), bars consideration of MCI's petition for review. Section 405 provides:
 
 
 14
 The filing of a petition for reconsideration shall not be a condition precedent to judicial review of any [Commission] order ... except where the party seeking such review ... relies on questions of fact or law upon which the Commission, or designated authority within the Commission, has been afforded no opportunity to pass.
 
 
 15
 The Commission contends that because MCI never addressed the proper interpretation of the IXC Orders in the proceedings below, the statute required a petition for reconsideration to be filed before judicial review could be obtained.
 
 
 16
 The statute, however, requires that reconsideration be sought only when the party seeking review advances a "question[ ] of ... law upon which the Commission ... has been afforded no opportunity to pass." See City of Brookings Mun. Tel. Co. v. FCC, 822 F.2d 1153, 1163 (D.C.Cir.1987) (agency must have "fair opportunity" to consider legal arguments); Alianza Federal de Mercedes v. FCC, 539 F.2d 732, 739 (D.C.Cir.1976) (same). The question MCI presented to the Commission was whether AT & T violated section 201(b) and, if so, what damages should be awarded. MCI's claim on review that the Commission decided that question by invoking an authority inadequate to justify the decision does not itself raise a novel question of law; it merely asks whether the original question was correctly decided. The Commission necessarily had an opportunity to pass upon the validity of the rationale that it actually put forth.
 
 
 17
 In Nat'l Ass'n for Better Broadcasting v. FCC, 830 F.2d 270 (D.C.Cir.1987) ("NABB "), the Association charged a television station with violations of the advertising rules in section 317 of the Act. The Commission dismissed the complaint by reference to its interpretation of the statutory requirements [304 U.S.App.D.C. 71] given in a policy statement. We allowed the Association to argue on review that the policy statement was inconsistent with the Act although no petition for reconsideration had been lodged. We noted that the Commission had full opportunity to resolve the complaint and actually purported to dispose of it. The argument on review was held merely to challenge the validity of the reasoning by which the Commission reached its decision. See id. at 274-75. Under the same analysis, section 405 does not bar review of MCI's challenge to the NRA Express Order.
 
 B.
 
 18
 On the merits, we must determine whether the Commission erred in ruling that MCI was not entitled to damages for AT & T's past bundling. We hold that it did. Although we review such determinations deferentially under the Administrative Procedure Act, we cannot uphold agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A) (1988). A decision resting solely on a ground that does not justify the result reached is arbitrary and capricious. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983).
 
 
 19
 The Commission's reliance on the IXC Orders to dispose of MCI's complaint is a non sequitur. Nothing in the Orders in any way purports to determine the legality of conduct occurring before their effective date. In the IXC Recon. Order, the Commission summarized the portion of its holding that is relevant here:
 
 
 20
 [W]e allow the customers of ... tariffed offerings with bundled 800 or inbound service to take service under their current arrangements provided that the customer has signed a final contract for service or begun taking service on the day prior to the release of this order.
 
 
 21
 IXC Recon. Order, supra, at 2677. MCI concedes that this ruling shields AT & T from liability based on its provision of services to previously bundled customers in the period following the effective date of the IXC Orders. But it is an error of logic to claim, as the Commission did, that the ruling controls the question of AT & T's liability for provision of services before the effective date of the orders.
 
 
 22
 The Commission argues that its reliance on the IXC Orders is an interpretation by an agency of its own regulations and is therefore entitled to be sustained unless we find it to be "plainly erroneous or inconsistent with the regulation." Stinson v. United States, --- U.S. ----, ----, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993). This is a correct statement of law that simply does not apply to the case before us. The Commission's proffered justification of its decision was not an interpretation of the IXC Orders. It was a flawed syllogism suggesting that the orders compelled rejection of MCI's claim.
 
 
 23
 To the extent that the NRA Express Order did interpret the IXC Orders, its reasoning did not support its result. In paragraph 21 of the NRA Express Order, the Commission explained that it was "in partial agreement with MCI's claim." The Commission noted that it had found in the IXC Orders that the 800 services market was not fully competitive (because of the nonportability of 800 numbers), and had therefore precluded AT & T from further bundling arrangements of the sort at issue. Paragraph 21 thus concluded that the NRA Express feature falls within the ambit of the prior findings and would constitute an unlawful practice until the advent of 800 number portability. All of this supports MCI's proposition that AT & T's conduct was unlawful and that it was entitled to damages. In Paragraph 22, however, the Commission reasoned cryptically that because the effect of the IXC Orders was prospective and prior customers were grandfathered, "no liability for damages attaches to AT & T for conduct occurring prior to the release date of the IXC Recon Order." NRA Express Order, supra, at 3051.
 
 
 24
 Like the Commission's general proposition on interpretation, it is a valid statement of law that rulemakings are generally prospective. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 472, 102 L.Ed.2d 493 (1988). That does not mean that in a prospective rulemaking in which the Commission has found conduct [304 U.S.App.D.C. 72] unlawful it has thereby found that the identical conduct was lawful in the past. Indeed, in this case, any implication is to the contrary. The very conduct that the Commission found to be unlawful in the IXC Orders is the conduct that MCI claims caused it harm.*
 
 
 25
 We recently reminded the Commission that although agencies "have a fundamental choice whether to interpret and apply federal statutes through adjudication or through rulemaking.... they cannot avoid their responsibilities in an adjudication properly before them by looking to a rulemaking, which operates only prospectively." AT & T, supra, at 732. Just so here. We hold that the Commission acted arbitrarily and capriciously in dispensing with MCI's complaint for damages on the basis of the IXC Orders.
 
 
 26
 The Commission and the intervenor argue that Commission precedent other than the IXC Orders dictates the same result that was actually reached. But under the rule of SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943), we may not affirm the Commission's decision even if it could have dismissed the complaint upon a plenary examination of the correct body of law. The Commission must adjudicate the question in the first instance.
 
 C.
 
 27
 We grant the petition for review, vacate the Commission's order and remand the case so that the Commission may determine whether AT & T's bundling of the NRA Express service in the period before the IXC Orders was unlawful, and, if so, whether MCI suffered damage thereby.
 
 
 
 *
 AT & T contends that the IXC Orders made a specific factual finding that AT & T's past bundling had no anticompetitive effects. The NRA Express Order, therefore, properly declined to award damages for the bundling
 We need not decide whether the Commission may, in adjudication, rely upon findings made in a prior rulemaking involving the parties to the adjudication; for the IXC Orders nowhere contain the findings that AT & T suggests. The orders found only that the grandfathering of previously bundled customers would not significantly affect competition in the future. See 6 F.C.C.R. at 5906. The Commission did not decide whether AT & T's practices had injured competition in the past, though it may do so on remand of the present proceeding.