**ATHENS COMMUNITY HOSPITAL, INC., dba Athens Community Hospital; AMISUB of North Carolina, dba Central Carolina Hospital, and Hospital Corporation of Smith and Overton County, dba Livingston Regional Hospital, Appellants,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Appellee.**

**No. 92–5445.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 10, 1994.

Decided May 6, 1994.

Byron J. Gross, Los Angeles, CA, argued the cause for appellants. With him on the briefs, were John R. Hellow, Los Angeles, CA, and W. David Allen, Washington, DC.

Patricia H. Wirth, Los Angeles, CA, and David T. Smorodin, Washington, DC, entered an appearance.

John Schumann, Atty., U.S. Dept. of Justice, Washington, DC, argued the cause for appellee. With him on the brief, were Eric H. Holder, Jr., U.S. Atty., and Anthony J. Steinmeyer, Atty., U.S. Dept. of Justice, Washington, DC. David V. Perry, Atty., U.S. Dept. of Health and Human Services, Washington, DC, entered an appearance.

Before BUCKLEY, WILLIAMS, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Three rural hospitals appeal from a decision of the district court rejecting their challenge to certain Medicare regulations promulgated by the Secretary of Health and Human Services. *See Athens Community Hospital, Inc. v. Sullivan,* 815 F.Supp. 1 (D.D.C.1992). The regulations in question determine whether a hospital is entitled to be redesignated from its actual to a putative geographic area for the purpose of computing the level of Medicare reimbursement it receives. In particular, the appellants argue that the Secretary's requirement that the county in which a hospital is located must be adjacent to the area to which the hospital seeks redesignation is arbitrary and capricious. We agree and hence reverse the decision of the district court.

## I. BACKGROUND

A hospital that participates in the Medicare program is reimbursed a standard amount for each service it provides, regardless of the costs that it actually incurs. The amount it is reimbursed is affected in two ways by whether it is located in a county in a "large urban," an "urban," or a "rural" area, defined respectively as an urban area the population of which exceeds one million; any other area within a Metropolitan Statistical Area; and any area that is not within an MSA. *See* 42 U.S.C. § 1395ww(d)(2)(D). First, the Secretary establishes an "average standardized amount per discharge" for each of those three geographic classifications. 42 U.S.C. § 1395ww(d)(2)(A)–(C). Second, the Secretary determines a specific wage index for each individual area in the country; the wage index is a component of the formula that determines the rate above or below the average at which a hospital is reimbursed. 42 U.S.C. § 1395ww(d)(2)(H).

Three times in recent years the Congress has determined that this geographical classification system was giving rise to certain inequities. In particular, a hospital that is in a rural area but must compete for labor with hospitals in a nearby urban area may be insufficiently reimbursed for the cost of providing services. Hence, in both 1987 and 1988 the Congress amended the Medicare Act in order to enable a number of rural hospitals to be redesignated to urban areas. *See* 42 U.S.C. §§ 1395ww(d)(8)(B).

Having twice amended the Act, the Congress remained concerned that an insufficient number of hospitals were, in fact, redesignated. Therefore, as part of the Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, 103 Stat. 2106, the Congress established the Medicare Geographic Classification Review Board to pass upon the application of any hospital seeking to be redesignated. *See id.* § 6003(h)(1) (codified as amended at 42 U.S.C. § 1395ww(d)(10)). The Congress directed the Secretary to "publish guidelines [including coverage of four specific subjects] to be utilized by the Board in rendering

decisions on applications" for redesignation, 42 U.S.C. § 1395ww(d)(10)(D)(i), and provided that a decision of the Board may be appealed to the Secretary. The decision of the Secretary is final, however, and not subject to judicial review.

The Act required the Secretary to promulgate regulations for the establishment and operation of the Board by a date certain that allowed her very little time. Accordingly, she issued an interim final rule implementing § 1395ww(d)(10) without prior notice or opportunity for public comment, pursuant to 5 U.S.C. § 553(b)(3)(B) (exception to procedural requirements for rulemaking where "agency for good cause finds ... that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest").

Among the regulations so issued is a requirement that "to be redesignated to a different rural or urban area, a hospital must demonstrate a close proximity to the adjacent area to which it seeks redesignation...." 42 C.F.R. § 412.230(a)(3). In the final rule, which she issued after a period for public comment, the Secretary added that the area to which the hospital seeks redesignation will be considered "adjacent" to the area in which it is located for this purpose only if the two areas are in contiguous counties. In addition, in order to demonstrate "a close proximity," a rural hospital seeking redesignation to an urban area must demonstrate either that it is no more than 35 road miles from the area to which it seeks redesignation or that more than 50 percent of its employees live in that urban area. *Id.* § 412.230(b). We upheld the proximity requirement in *Universal Health Services of McAllen v. Sullivan,* 770 F.Supp. 704 (D.D.C.1991), *aff'd mem.,* 978 F.2d 745 (D.C.Cir.1992).

Each appellant in this case is a rural hospital less than 35 road miles from the area to which it seeks redesignation, and thus satisfies the proximity requirement. Because in each instance a small strip of land separates the county in which the appellant hospital is located from the county to which it seeks redesignation, however, the Board denied their requests.

The Secretary affirmed the Board and the hospitals filed suit in the district court, seeking a declaration that the adjacency requirement is arbitrary and capricious. The district court upheld the regulations and the hospitals now appeal that decision.

## II. ANALYSIS

■ Upon the issue whether an administrative regulation is lawful, we do not defer to the judgment of the district court. Instead, we determine de novo whether the agency's decision was arbitrary or capricious, based solely upon the administrative record. *See Dr. Pepper/Seven–Up Cos. v. Federal Trade Commission,* 991 F.2d 859, 862 (D.C.Cir.1993).

### A. Chevron Step I

■ The hospitals argue first that the adjacency requirement is facially inconsistent with the underlying statute and thus should be struck down under the first step of the analysis laid out in *Chevron U.S.A. Inc. v. Natural Resources Defense Fund, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In reviewing the Secretary's "construction of a statute that [she] is charged with administering, we 'must give effect to the unambiguously expressed intent of Congress.'" *Noland v. Shalala,* 12 F.3d 258, 260 (D.C.Cir.1994) (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781–82). Hence, we must determine whether the "Congress has directly spoken to the precise question at issue." *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781. If not, then we must uphold the Secretary's reasonable interpretation of the statute. *Noland,* 12 F.3d at 260.

In this case, there is not the slightest indication that the Congress expressly precluded the Secretary from including the adjacency requirement in the regulations. Certainly nothing in the statute specifically prevents the Secretary from adopting an adjacency requirement. The hospitals assert that the regulation is nonetheless prohibited by the statute because it is not related to any of the four subject areas, such as "comparing wages," for which the Congress directed the Secretary to promulgate guidelines for the

Board. *See* U.S.C. § 1395ww(d)(10)(D)(i)(I)–(IV) (listing the four subject areas). The Congress, however, required only that the guidelines "include" the four enumerated subjects; it did not prohibit the Secretary from covering other relevant subjects.

■ The hospitals also argue that because the statute speaks in terms of "guidelines," it precludes the Secretary from promulgating a rigid rule, such as the adjacency requirement, to govern the proceedings of the Board. In essence, the hospitals argue that the bright-line adjacency requirement strips the Board of the discretion that the Congress specifically intended it to have.

How much discretion the Congress gave the Board is not as unambiguous as the appellants suggest, however. The Board is, after all, obligated by statute to follow the Secretary's guidelines. Any guideline that the Secretary might issue would, therefore, if it is to have any effect, cabin the Board's discretion to some degree. *See also* 42 U.S.C. § 1395ww(d)(10)(e)(i) (permitting the Board to establish its own rules and procedures only to the extent that they are "not inconsistent with the . . . regulations of the Secretary"). And the degree to which the Secretary may through guidelines confine the Board's discretion is (unsurprisingly) not specified in the statute. Under *Chevron* we must take this ambiguity to mean that the Congress delegated to the Secretary the authority to determine the degree to which the Board's discretion should be limited. We therefore reject the hospitals' Step One challenge to the adjacency requirement.

*B. Chevron Step II*

■ Under the second step of the analysis laid out in *Chevron,* "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." 467 U.S. at 843, 104 S.Ct. at 2779. Although our review is therefore narrow, we must overturn the adjacency requirement if the Secretary has failed to "articulate a satisfactory explanation for [her] action" or if her explanation "is so implausible that it could not be ascribed to a difference in view or the product of agency

expertise." *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983); *see also MCI Telecommunications Corp. v. Federal Communications Commission,* 10 F.3d 842, 846 (D.C.Cir.1993) ("A decision resting solely on a ground that does not justify the result reached is arbitrary and capricious").

The Secretary has advanced three justifications for the adjacency requirement: it screens out the application of any hospital that does not have a significant geographic relationship to the area to which it seeks redesignation; it is consistent with the way urban geographic areas are defined by OMB, *see* 56 Fed.Reg. 25,458, 25,472 (June 4, 1991); and it is consistent with the prior redesignation procedure in the Medicare Act.

The second and third rationales for the adjacency requirement are apparently mere makeweights, for the Secretary makes no attempt to relate them to the goals that the Congress intended the redesignation program to serve. We can only guess that they are intended—because they must be—to answer the question whether a hospital competes for labor in the area to which it seeks to be designated. The Secretary, however, nowhere explains how either the methodology used by the OMB to delineate the boundaries of an MSA, or the pre-existing statutory program that the Congress supplemented precisely because it was inadequate, is relevant to the question whether a hospital competes for labor primarily in a nearby urban area.

The Secretary's justification of the adjacency requirement as a guarantor of geographic proximity must also fail. This is not to say that geographic proximity is not relevant to whether a hospital competes in a particular area for labor; indeed, the closer it is to a labor market the more likely it does compete there. Thus, we have already upheld the 35–mile requirement. *See Universal Health Services of McAllen,* above. Nor do we doubt that in some circumstances the adjacency of counties might reasonably serve as an easily administered proxy for a hospital's geographic proximity to a labor market.

Some over- and under-inclusiveness would not be fatal to the adjacency requirement if the Secretary gave a reasonable justification for administering only rough justice. *Cf. State of Wisc. Dept. of Health & Social Servs. v. Bowen,* 797 F.2d 391, 399 (7th Cir. 1986) (holding that a rule that "may not provide the optimal result in some small number of cases" is not necessarily "arbitrary and capricious").

In this case, however, we must analyze the adjacency requirement in the light of the 35–mile requirement, which tends to ensure that a rural hospital is proximate to the county to which it seeks redesignation. This guaranty is useful to the Secretary because she apparently assumes that—at least with respect to hospitals located in rural areas—potential employees are willing to drive up to 35 miles from home to work; hence, a rural hospital located within 35 miles of an urban area is presumed to compete for employees in the urban area labor market.

What conceivable role, then, might the additional requirement of adjacency play in identifying the labor market(s) in which a particular hospital competes? Although it may be true that a potential employee will travel up to 35 miles to work, there is no reason to believe that the number of county lines he must cross going between his home and his place of employment will affect his decision to accept a job. In light of the valid mileage requirement, therefore, it is implausible that the adjacency requirement has any additional role to play in sorting out the labor markets in which a hospital competes.

The district court believed that the adjacency requirement could be justified as "a simple and easily administrable criterion to use in determining where to classify a hospi-

tal." *Athens Community Hospital,* 815 F.Supp. at 3. We do not consider the merits of this rationale, however, for the Secretary did not rely upon administrability to justify the adjacency requirement in either the final interim rule or the final rule. With good reason, we might add: ease of administration can hardly justify a requirement that is of little or no benefit to the Secretary (once the 35–mile rule is in place) but imports error into the Board's determinations whether a rural hospital competes for labor in a nearby MSA.

## III. CONCLUSION

In summary, none of the reasons proffered by the Secretary rationally supports the adjacency rule she adopted and there does not appear to be any way in which it could be justified while the 35–mile rule is in force. We hold, therefore, that as a supplement to the 35–mile rule the adjacency requirement is arbitrary and capricious.

Because we find the regulation at issue is substantively invalid, we need not address either the hospitals' challenge to the procedure used to promulgate it or their challenge to the Secretary's determination that adjacent means contiguous. Accordingly, we reverse the judgment of the district court, and declare the adjacency requirement unlawful.

*So ordered.*