**EAST ALABAMA MEDICAL CENTER, Plaintiff,**

v.

**Donna SHALALA, Secretary of the Department of Health and Human Services, Defendant.**

**Civil Action No. 95–01927 (CRR).**

United States District Court, District of Columbia.

May 3, 1996.

Nathalie F.P. Gilfoyle, Albert W. Shay, and Jana V.T. Baldwin, of McDermott, Will & Emery, Washington, DC, for Plaintiff.

Lorie Mayorga and Lawrence J. Harder, Health Care Financing Division, Office of the General Counsel, United States Department of Health and Human Services, Baltimore, MD; along with Eric H. Holder, Jr., United States Attorney, Washington, DC; and Harriet S. Rabb, General Counsel, Darrel J. Grinstead, Associate General Counsel, and Henry R. Goldberg, Deputy Associate General Counsel, Department of Health and Human Services, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court in the above-captioned case are the parties' cross-motions for summary judgment. The plaintiff, a hospital that participates in the Medicare program, challenges the validity of a final rule by the Secretary of the Department of Health and Human Services, 42 C.F.R. § 412.230(a)(5)(ii) (the "1995 Regulation").[1] The 1995 Regulation, effective October 1, 1996, precludes a hospital from obtaining Medicare geographic reclassification for purposes of using another area's "standardized amount" if the area to which the hospital seeks reclassification does not have a higher standardized amount than the one the hospital currently receives. Upon careful consideration of the pleadings, the entire record herein, and the law applicable thereto, and for the reasons expressed below, the Court shall deny the plaintiff's motion for summary judgment and shall grant the defendant's motion for summary judgment.

### BACKGROUND

The Medicare program, established under title XVIII of the Social Security Act ("Act"), 42 U.S.C. § 1395 *et seq.*, pays for covered medical services furnished primarily to eligible aged and disabled persons. Part A of the program authorizes payment for covered care in institutions, including hospitals that have entered into a provider agreement with the Secretary. 42 U.S.C. § 1395x(u), 1395cc. Most hospitals that have entered into such agreements, including the plaintiff, are reimbursed under the "Prospective Payment System" ("PPS"). *Id.* Under the PPS, the amount of reimbursement to a provider hospital for a given service is dependent upon the hospital's average "standardized amount" per discharge, *see* 42 U.S.C. § 1395ww(d)(2)(C)–(D), and the area wage index applicable to the hospital, *see* 42 U.S.C. § 1395ww(d)(3)(E).

All hospitals participating in the Medicare program are classified as located in "rural areas," "large urban areas," and "other urban areas." The standardized amount and the wage index are determined with reference to these classifications. For federal fiscal years prior to FY1995, the Act re-

---

1. The 1995 Regulation reads:

   **§ 412.230 Criteria for an individual hospital seeking redesignation to another rural area or an urban area.**

   (a) *General*—(1) *Purpose.* Except as provided in paragraph (a)(5) of this section, an individual hospital may be redesignated from a rural area to an urban area, from a rural area to another rural area, or from an urban area to another urban area for the purposes of using the other area's standardized amount for inpatient operating costs, wage index value, or both.

   \* \* \* \* \* \*

   (5) *Limitations on redesignation.* The following limitations apply to redesignation:

   \* \* \* \* \* \*

   (ii) A hospital may not be redesignated for purposes of the standardized amount if the area to which the hospital seeks redesignation does not have a higher standardized amount than the standardized amount the hospital currently receives.

   42 C.F.R. § 412.230; 60 Fed.Reg. 45,848–49 (Sept. 1, 1995).

quired the Secretary to compute a separate average of hospital standardized amounts for the three different classifications. 42 U.S.C. § 1395ww(d)(2)(D).

Congress has established a process for hospitals to apply for "reclassification" to another geographic area for certain Medicare payment purposes. 42 U.S.C. § 1395(d)(10). To implement this process, Congress established the Medicare Geographic Classification Review Board ("MGCRB" or "Board") to consider applications for reclassification. 42 U.S.C. § 1395ww(d)(10)(A)—(C). The MGCRB reviews reclassification applications pursuant to statutory standards, as well as guidelines prescribed by the Secretary. 42 U.S.C. § 1395ww(d)(10)(C)—(E).

Pursuant to 42 U.S.C. § 1395ww(d)(10)(D)(i), the Secretary has issued regulations establishing guidelines to be used by the MGCRB in reviewing applications for reclassification. 42 C.F.R. §§ 412.230–412.280. Under the guidelines, a hospital may be reclassified to another area for the purpose of using the other area's wage index, standardized amount, or both, if the requesting hospital meets certain criteria. 42 C.F.R. §§ 412.230–412.234.

The PPS also applies additional reimbursement factors for certain hospital-specific characteristics, such as the Disproportionate Share Hospital ("DSH") adjustment relevant to the present case. The DSH adjustment reflects the higher costs that hospitals incur for treating a large proportion of low-income patients, as well as the higher indirect costs of operating in areas accessible to the poor. 42 U.S.C. § 1395ww(d)(5)(F). The Act does not specify the effect, if any, of reclassification on these reimbursement factors; however, the Secretary has tied these reimbursement factors to the standardized amount classification. 55 Fed.Reg. 36,761 (Sept. 6, 1990); 56 Fed.Reg. 25,471 (June 4, 1991). In general, urban hospitals receive more favorable DSH payments than do rural hospitals.

After the MGCRB guidelines were promulgated, Congress amended the Act in November 1990 to mandate the gradual merger of the "rural" and "other urban" standardized amounts so that, beginning in FY1996, the Secretary must calculate a single "other area" standardized amount applicable to both rural and other urban hospitals, while large urban areas continue to receive a separate, higher standardized amount. 42 U.S.C. § 1395ww(d)(3)(A)(iv). When Congress phased out the distinct standardized amounts for "rural" and "other urban areas," the Secretary proposed a change to the regulations that a hospital would not be eligible for reclassification for the purpose of the standardized amount if the area to which it sought reclassification did not have a higher standardized amount than the area in which the hospital was located. 60 Fed.Reg. 29,202, 29,216 (June 2, 1995) (proposed rule). Prior to this proposed change, the Secretary had accepted, processed, and approved MGCRB applications by hospitals to seek geographic reclassification to an urban area, even if such reclassification would not result in the hospital receiving a higher standardized amount. In proposing the change, the Secretary reasoned that, while the statutory language permitted her to tie reimbursement factors such as DSH to the standardized amount, it did not require her to perform reclassifications for a purpose other than changing a hospital's standardized amount or wage index. After notice and comment, the Secretary adopted the proposed rule as final on September 1, 1995. 60 Fed.Reg. 45,799–802, 45,848–49 (Sept. 1, 1995) (final rule); 42 U.S.C. § 412.230(a)(5)(ii).

The plaintiff is a 294–bed, non-profit, acute care hospital located in Opelika, Alabama, a rural area roughly 30 miles from Columbus, Georgia. It is a provider of services as defined in the Medicare Act and has entered into an agreement with the Secretary to provide services to Medicare beneficiaries pursuant to 42 U.S.C. § 1395cc. The plaintiff has been denied reclassification to the Columbus, Georgia urban area on the ground that the challenged regulation prevents that reclassification. As a result, the plaintiff will not be eligible for an increased DSH payment. On October 12, 1995, the plaintiff filed a Complaint with the Court, seeking declaratory and injunctive relief against enforcement of the Secretary's regulation, 42 C.F.R.

§ 412.230(a)(5)(ii), on the grounds that it violates the Administrative Procedure Act and the Medicare Act.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, there are no genuine issues of material fact in dispute and the case properly is postured for determination as a matter of law.

Under the APA, the Court must hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or without observance of procedure required by law. 5 U.S.C. § 706. The plaintiff here has lodged a substantive challenge to the 1995 Regulation, as well as a procedural one.

## I. THE 1995 REGULATION WITHSTANDS THE PLAINTIFF'S SUBSTANTIVE CHALLENGE UNDER THE ADMINISTRATIVE PROCEDURE ACT.

■ Consistent with the scope of review prescribed in the APA, when a court reviews an agency's construction of the statute that it administers, it is confronted with two questions:

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would

be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted). Based on these well-settled principles, the Court shall conclude that Congress did not express a specific intention as to whether reclassification may occur in the absence of a standardized amount differential between the current classification and the requested classification. The Court further shall conclude that the 1995 Regulation constitutes a reasonable policymaking exercise on the part of the agency.

### A. CONGRESS DID NOT EXPRESS A SPECIFIC INTENTION AS TO WHETHER RECLASSIFICATION MAY OCCUR IN THE ABSENCE OF A STANDARDIZED AMOUNT DIFFERENTIAL.

The Act provides in relevant part that the MGCRB "shall consider the application of any subsection (d) hospital requesting that the Secretary change the hospital's geographic classification for purposes of determining for a fiscal year—(I) the hospital's average standardized amount . . . or (II) the factor used to adjust the DRG prospective payment rate for area difference in hospital wage levels. . . ." 42 U.S.C. § 1395ww(d)(10)(C)(i). The Act does not directly speak to the precise question at issue here, i.e., the appropriate course of action with respect to a reclassification application in the absence of a standardized amount differential between the current classification and the requested classification. Congress, however, did delegate to the Secretary the task of publishing guidelines for the MGCRB in rendering reclassification decisions. 2 U.S.C. § 1395ww(d)(10)(D). Because the Act does not speak directly to the question at issue here, the Court must address the second question posed in *Chevron*, that is, whether the 1995 Regulation is based on a

permissible construction of the Act. *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781–82.

### B. THE 1995 REGULATION IS BASED ON A PERMISSIBLE CONSTRUCTION OF THE ACT.

▉ In determining whether the 1995 Regulation is a permissible construction of the Act,

> the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971) (citations omitted). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in the view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). The agency must supply a reasoned basis for its action, supported by substantial evidence on the record considered as a whole; however, a court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.*

The plaintiff argues that the 1995 regulation represents action by the Secretary that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law because it contravenes the Secretary's prior policies and practices without sufficient justification, because it is premised on contradictory interpretations of the same statutory language, because it unlawfully discriminates between similarly situated hospitals, because it is impermissibly based on budgetary savings, and because it is inconsistent with the Act. The Court shall address each of these arguments in turn.

#### 1. The Secretary Has Provided a Sufficient Justification For Changing Her Prior Policy and Practice.

▉ That the 1995 Regulation represents a change in the Secretary's policy is undisputed. However, an agency may change its course to adapt its rules and policies to the demands of changing circumstances, as long as it supplies a reasoned analysis for doing so. *State Farm*, 463 U.S. at 42, 103 S.Ct. at 2866. Furthermore, an agency's interpretation of a statute is entitled to deference, even where it "represents a sharp break with prior interpretations." *Rust v. Sullivan*, 500 U.S. 173, 186, 111 S.Ct. 1759, 1769, 114 L.Ed.2d 233 (1991).

In the rulemaking record, the Secretary set out her reasons for adding the requirement that the area requested for reclassification have a higher standardized amount than the area to which the hospital is currently classified:

> The statute *requires* the Board to consider requests for standardized amount reclassification only if the "purpose" of the request is for the hospital to receive the other area's standardized amount. Since the standardized amount for rural areas now equals the standardized amount for other urban areas, there is no reason for a rural hospital to be reclassified to another urban area "for purposes of" the standardized amount itself.

60 Fed.Reg. 45,800 (Sept. 1, 1995) (emphasis in original). Further, the Secretary stated:

> As indicated in the June 4, 1991 final rule implementing the reclassification process, "we believe geographic reclassification should be limited to those hospitals which are disadvantaged by their current geographic classification because they compete with the hospitals that are located in the geographic area to which they seek to be reclassified." (56 Fed.Reg. 25,469.)

For purposes of determining an appropriate standardized amount, a hospital is not disadvantaged by its "current geographic classification" if the area to which

it seeks reclassification has the same standardized amount.

*Id.* at 45,800–01. Because the average standardized amount for hospitals located in a rural area was made equal to the average standardized amount for hospitals located in other urban areas, hospitals seeking reclassification from rural to other urban areas for purposes of the standardized amount would receive no increase in their standardized amount. The Secretary rationally determined that because 42 U.S.C. § 1395ww(d)(10)(C) requires consideration of an application for reclassification for purposes of determining average standardized amount, it would be inconsistent with the Act to allow reclassification if such reclassification would not alter the average standardized amount.

The Court is aware that the Secretary's new policy of denying reclassification in the absence of a standardized amount differential has a concomitant effect on the potential DSH benefits to those hospitals denied an urban classification. To this point, the Secretary noted

> [T]he statute does not mandate that hospitals reclassified as urban for purposes of the standardized amount also be considered urban for purposes of DSH.

*Id.* at 45,801. The Secretary believed that the reclassification provisions were not intended to allow hospitals to be reclassified merely for the purpose of receiving higher DSH payments. 60 Fed.Reg. 29,217 (June 2, 1995).

The Act leaves the matter of pendent benefits to the Secretary's discretion. The plaintiff as much as concedes so. *See* Plaintiff's Mot. for Summ.Jud. at 27. The Secretary's practice of tying DSH benefits to the standardized amount classification has not been altered, nor is that practice challenged here. Thus, the fact that the Secretary's Regulation implementing the reclassification provision impacts the receipt of DSH benefits does not, in itself, invalidate that Regulation.

■ The Court holds that the 1995 Regulation represents a permissible construction of the Act. The Act guarantees hospitals the right to apply for reclassification for purposes of determining the hospital's average standardized amount or wage. It is reasonable that the Secretary, in her discretion, would preclude hospitals from reclassification for purposes of standardized amount if there is no difference in the standardized amounts of the current and requested geographic areas. The Court must give controlling weight to the Secretary's policymaking decision "unless it appears from the statute or legislative history that the [decision] is not one that Congress would have sanctioned." *Chevron,* 467 U.S. at 845, 104 S.Ct. at 2783. The Court cannot say that the Secretary's promulgation of the 1995 Regulation is a decision that Congress would not have sanctioned.

### 2. The 1995 Regulation Is Not Premised On Contradictory Interpretations of the Same Statutory Language.

The plaintiff asserts that the 1995 Regulation is premised on contradictory interpretations of the same statutory language. In essence, the plaintiff asserts that, in making reclassification regulations, the Secretary reads the Act one way; whereas, in making regulations regarding a hospital's eligibility to receive certain pendant benefits, the Secretary reads the Act another way.

The Court fails to see the inconsistency in the Secretary's policy. The Secretary's approach does not attribute inconsistent definitions to the language "standardized amount," rather the term is consistently interpreted by the Secretary, both in determining reclassification and in determining whether to tie benefits, above and beyond the standardized amount, to a particular classification. Again, the choice to tie these benefits to the classification has not been challenged and represents a reasonable one within the Secretary's discretion.

### 3. The 1995 Regulation Is Not Invalid As Arbitrarily Discriminatory.

■ The plaintiff argues that the 1995 Regulation is arbitrary and capricious because, according to the plaintiff, "two hospitals that have the same costs, compete for the same resources, and serve the same pa-

tient population will be subject to widely varying reimbursement rates." Plaintiff's Mot. for Summ.Jud. at 31.

The 1995 Regulation does differentiate between hospitals—those for whom reclassification would result in a higher standardized amount and those for whom reclassification would not result in a higher standardized amount. In this regard, however, the hospitals differentiated between are not similarly situated.

Furthermore, while the Act speaks specifically to reclassification for purposes of determining standardized amount or wage level; it does not mandate consideration of reclassification for any other purposes, such as DSH adjustments. Thus, there is nothing in the reclassification provision itself mandating placement of hospitals on equal footing with regard to DSH adjustments. In this regard, Congress has left to the Secretary the gap-filling function of promulgating reclassification guidelines, insisting only that the Secretary's guidelines include four specific areas of consideration—those listed in 42 U.S.C. § 1395ww(d)(10)(D)(i)—(iv). In fulfilling her charge, the Secretary naturally must balance competing policy concerns within the Medicare system. Thus, while the plaintiff itself may be disadvantaged by the 1995 Regulation, other hospitals are affected favorably.[2] And, to some extent, the Secretary may strike a balance that grants fewer benefits overall to certain rural hospitals.[3] Ultimately, the Court must defer to the Secretary's scheme to balance competing policy concerns as long as it is permissible under the Act.

### 4. The Reasoning behind the 1995 Regulation is not a pretext for Budgetary Savings.

■ The plaintiff argues that the Secretary's true motivation for promulgating the 1995 Regulation is budgetary savings. However, the plaintiff points to nowhere in the record where such rationale is articulated. Moreover, the budget neutrality provision of the reclassification provision, 42 U.S.C. § 1395ww(d)(8)(D), directs that the Secretary make a proportional adjustment in the standardized amount to assure that a reclassification decision does not result in aggregate payments that are greater or less than that would be otherwise made. DSH payments are included in the budget neutrality adjustment. *See* 60 Fed.Reg. 45,854 (Sept. 1, 1995). Thus, the Act itself precludes the Secretary from effectuating budgetary savings through alterations to the reclassification guidelines.

### 5. The 1995 Regulation is not inconsistent with the Act.

The plaintiff argues that the 1995 Regulation is inconsistent with the Act because it prohibits the MGCRB from reviewing certain reclassification applications, that is, those applications from hospitals seeking reclassification to an area with the same standardized amount. The Secretary argues that the Regulation is not inconsistent with the Act because the Act requires, not that the Board consider reclassification for any purpose whatsoever, but that the Board consider reclassification for purposes of determining the hospital's standardized amount.

The Court agrees with the Secretary that the 1995 Regulation is not inconsistent with the Act. Moreover, the Court concludes that it is more consistent with the statutory text to read the Act as requiring the Board to consider reclassification requests only if the purpose of the request is to receive the requested area's standardized amount (or wage

---

**2.** Any rule that narrows the reclassification criteria aids hospitals not directly affected by the restriction because the Act instructs the Secretary to make a proportional adjustment to the national payment rate so that reclassification decisions do not result in aggregate Medicare payments greater than or less than those that would be made absent any reclassifications. 42 U.S.C. § 1395ww(d)(8)(D). Thus, if the Secretary revises her reclassification criteria to provide fewer reclassifications, the national rate affecting all hospitals will be slightly increased.

**3.** Regardless of the 1995 Regulation, rural hospitals may still seek reclassification for wage index purposes. 42 C.F.R. § 412.230(e). Also, rural hospitals qualifying for rural referral center ("RRC") status are eligible for reclassification to a large urban area, provided that it is the closest urban area and provided the hospital meets the cost comparison test. 42 C.F.R. § 412.230(a)(3).

index) than it is to read the Act as requiring the Board to consider reclassification requests for other purposes not specifically mentioned, such as DSH payments.

Furthermore, the plaintiff argues that the 1995 Regulation violates the Act because it is not a "guideline" but, rather, is a blanket prohibition against granting applications from hospitals seeking reclassification to an area with the same standardized amount. The plaintiff argues, in essence, that the Regulation is unlawful because it removes the MGCRB's discretion to approve reclassification in cases where there is no standardized amount differential.

Were the Court to accept the plaintiff's argument, any substantive criteria placed by the Secretary on reclassifications by the MGCRB would be a nullity, including those existing guidelines relating to proximity, which were upheld by this Circuit in *Universal Health Services of McAllen, Inc. v. Sullivan*, 770 F.Supp. 704 (D.D.C.1991), *aff'd mem.*, 978 F.2d 745 (D.C.Cir.1992). Moreover, not only does this Court find the plaintiff's argument unpersuasive, the Court of Appeals of this Circuit specifically rejected the same challenge to one of the Secretary's reclassification regulations in *Athens Community Hospital, Inc. v. Shalala*, 21 F.3d 1176, 1179 (D.C.Cir.1994). In *Athens*, a group of rural hospitals argued that the Secretary was precluded from promulgating a rigid rule governing reclassification because it stripped the MGCRB of discretion. *Id.* The Court of Appeals rejected the argument, holding that Congress delegated to the Secretary the authority to determine the degree to which the MGCRB's discretion should be limited. *See Athens*, 21 F.3d at 1179 ("Any guideline that the Secretary might issue would ... if it is to have any effect, cabin the Board's discretion to some degree."); *see also* 42 U.S.C. § 1395ww(d)(10)(E)(i) (permitting the Board to establish its own rules and procedures only to the extent that they are "not inconsistent with the ... regulations of the Secretary.").

Finally, the plaintiff asserts that the 1995 Regulation fails to satisfy 42 U.S.C. § 1395ww(d)(10)(D)(i)(III), which states that the Secretary shall include in her guidelines those for "considering information provided by an applicant with respect to the effects of the hospital's geographic classification on access to inpatient hospital services by Medicare beneficiaries." The Secretary counters that she has included guidelines for considering such information. Specifically, she asserts that the provisions relating to rural referral centers ("RRCs") and sole community hospitals ("SCHs"), known as the "special access rules," were promulgated to satisfy the mandate of 42 U.S.C. § 1395ww(d)(10)(D)(i)(III).

It has been the Secretary's constant position that the special access guidelines applicable to RRCs and SCHs were promulgated to address the Act's requirement that the guidelines include criteria for considering information provided by a hospital with respect to the effects of the hospital's geographic classification on access to inpatient hospital services for Medicare beneficiaries. *See* 56 Fed.Reg. 25,472 (June 4, 1991) (noting that access to care is only an issue in areas serviced by RRCs and SCHs); 60 Fed.Reg. 45,801 (Sept. 1, 1995). The regulation at issue here relates to the separate matter of precluding reclassification altogether when such reclassification is not for the purpose of determining standardized amount (or wage index). As the Court has discussed, *supra*, this criteria comports with the language of 42 U.S.C. § 1395ww(d)(10)(C), which directs that the MGCRB consider applications for reclassification for purposes of determining a hospital's standardized amount or wage index. To the extent that the Secretary's efforts to comply with 42 U.S.C. § 1395ww(d)(10)(D)(III) in promulgating the special access rules fall short of the statutory mandate, any remedy should be sought by way of a challenge to those provisions, and not to the 1995 Regulation now at issue before the Court.

## II. THE 1995 REGULATION WITHSTANDS THE PLAINTIFF'S PROCEDURAL CHALLENGE UNDER THE ADMINISTRATIVE PROCEDURE ACT.

The plaintiff argues that, in promulgating the 1995 Regulation, the Secretary

**36**

violated the notice and comment requirements of the APA in that she failed to consider and address three issues set forth in the public comments. 5 U.S.C. § 553; 5 U.S.C. § 706. Specifically, the plaintiff points to three comments that, allegedly, were not addressed by the Secretary.

■ To comply with the APA, the Secretary must adequately explain an action and must respond to "relevant" and "significant" public comments; neither requirement, however, is particularly demanding. *Public Citizen, Inc. v. Federal Aviation Admin.*, 988 F.2d 186, 197 (D.C.Cir.1993). With regard to responding to public comments, the Secretary is not required to discuss every item of fact or opinion included in the submissions. *Id.* The Secretary need only state the main reasons for the decision and indicate that she has considered the most important objections. *Simpson v. Young*, 854 F.2d 1429, 1435 (D.C.Cir.1988).

The first comment that the plaintiff asserts was not addressed relates to a passage taken from the conference report summarizing the underlying House Bill that the Secretary must "establish a procedure for hospitals to submit an application requesting a change in the classification of the *county* in which the hospital is located from rural to urban," H.R.Conf.Rep. No. 386 at 721. As the Secretary points out, however, the quoted text is from the summary of the underlying House Bill, and not from the summary of the Conference Agreement, which substantively modified the House Bill, and which was subsequently enacted into law. Also, although the summary of the Conference Agreement itself mentions adjustments of wage indexes and standardized amounts to allow for reclassification, it does not mention anything about adjustments to payment factors other than wage indexes and standardized amounts. The plaintiff has failed to establish that this particular comment represented a major issue before the Secretary during the rulemaking procedure. As the comment is of questionable relevance and meaning, the Court shall not hold the 1995 Regulation invalid for the Secretary's failure to specifically address this comment.

The second comment that the Secretary allegedly failed to address during rulemaking is that the 1995 Regulation was inconsistent with the Secretary's longstanding interpretation of the MGCRB provision. As addressed above, however, the Secretary is permitted to alter her interpretation of a statute, provided she articulates a satisfactory explanation for doing so. The Court already has concluded that a satisfactory explanation was articulated.

The third comment the Secretary allegedly did not address is one to the effect that the 1995 Regulation was not authorized by the Act because the regulation is not a guideline but, rather, is a blanket prohibition. It is clear from the rulemaking record that the Secretary addressed the statutory basis for promulgating the 1995 Regulation. *See* 60 Fed.Reg. 45,800–01. Furthermore, as discussed in section I.B.5, *supra*, this comment does not convey a persuasive objection to the regulation and, as such, does not present a significant or major policy issue for the Secretary to address. *See Athens*, 21 F.3d at 1179.

### CONCLUSION

For the foregoing reasons, the Court shall deny the plaintiff's Motion for Summary Judgment and shall grant the defendant's Motion for Summary Judgment.